EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* FERNANDO GARCÍA RIVERA, acusado y apelante.

*Número:* CR-72-9      *Resuelto:* 14 de marzo de 1975

*Miguel A. Román,* abogado del apelante; *Gilberto Gierbolini, Procurador General,* y *Augusto A. Cirino, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: El día 3 de febrero de 1970 se encomendó a un policía el diligenciamiento de una citación judicial dirigida al apelante Fernando García Rivera, médico cirujano de profesión, para que éste compareciera como testigo en un juicio criminal a celebrarse el 12 de febrero de ese mismo año. El policía se personó en el Hospital de Veteranos, institución donde trabajaba el apelante, y dejó copia de la citación en la "Secretaría" del referido hospital con el Sr. Monserrate, tal como se acostumbraba notificar las citaciones dirigidas a médicos que allí trabajaban. Llegado el día del juicio, para el cual fue "citado" el apelante como testigo, y no habiendo comparecido éste, el juez de instancia ordenó al alguacil que citara al apelante para que compareciera. El alguacil comunicó al apelante por teléfono la orden de citación del juez de instancia pero no tuvo éxito en su gestión ya que, según declarara el alguacil, el apelante le manifestó que "no tenía que ir . . . porque no había sido citado, y en segundo lugar, tenía que operar", comunicándole además que "yo no voy al tribunal, no voy porque usted me cite, si quieren, que vengan a buscarme arrestado." Al venir al conocimiento del juez de instancia la negativa del apelante a comparecer, expidió en corte abierta una orden de arresto contra el apelante.

Así las cosas el alguacil se personó en el Hospital de Veteranos acompañado de un policía, a cumplimentar la orden de arresto dirigida al apelante, y lograron notificarle personalmente de la misma requiriéndole a su vez su comparecencia al Tribunal Superior.

En ese momento comenzó la angustiosa odisea de cuatro horas de duración del alguacil y del policía que lo acompañaba

en sus intentos de lograr que el apelante los acompañara al tribunal en cumplimiento de la citación y orden de arresto notificádale. El apelante les dijo que tenían que esperar bastante aduciendo que debía efectuar una operación en esos momentos. Mientras el alguacil llamaba al juez para informarle sobre la demora, el apelante se desapareció. El alguacil esperó en el hospital por espacio de aproximadamente una hora y al ver que el apelante no llegaba se dirigió junto al policía a la sala de operaciones del hospital, a donde no les fue permitido entrar a pesar de sus requerimientos. El Dr. Héctor Nadal salió de la sala de operaciones y les informó que el apelante no estaba allí pero que trataría de localizarlo. Se dirigieron entonces al Director Médico del hospital, doctor José Ferraiouli, y le explicaron la situación. El doctor Ferraiouli llamó a la sala de operaciones donde fue informado que el apelante no se encontraba allí ni tenía operación alguna pendiente.

El alguacil bajó entonces al salón de espera (*lobby*) del hospital con el fin de estar pendiente de la salida del apelante. Después de un largo rato, se comunicó con el Jefe de Seguridad del hospital, a quien le explicó la encomienda que tenía. Este puso a la disposición del alguacil varios de sus subalternos y "bloqueó" "todas las salidas" del hospital. El alguacil declaró que se registraron todas los pisos del hospital, "sin resultado alguno". En la cafetería del hospital se encontraron con un tal Sr. Isern, quien resultó estar buscando también al apelante por haberse ausentado del "servicio . . . sin permiso del hospital". Procedió entonces el alguacil a averiguar a través del "agente" de seguridad del hospital cuál era el automóvil del apelante, apostándose al lado de dicho vehículo con el fin de arrestarlo tan pronto apareciere. Al poco rato llegó el apelante en un automóvil marca "Chevelle" color verde, e intentó estacionarlo frente al hospital. El alguacil corrió detrás del carro, pero el apelante dio un viraje, por lo que el alguacil sugirió al "agente de

seguridad" del hospital que se colocara "en el medio de la calle". El agente pidió al apelante que se detuviera pero éste "le tiró el carro encima", logrando el agente evadir el golpe.

El Dr. Ferraiouli, Director Médico, declaró que el apelante pudo haber sido relevado de su trabajo para comparecer al tribunal, que las citaciones de corte para los médicos son generalmente entregadas en la oficina, que cuando el alguacil del tribunal le informó sobre la orden que tenía en su poder para el apelante trató de conseguirlo pero fue informado que se buscó por el hospital y no se encontró.

En vista de lo acontecido, el alguacil regresó al tribunal a informar al juez lo sucedido. Aprovechó para llamar al Cuartel de la Policía de Puerto Nuevo y al jefe de seguridad del hospital para que estuvieran pendientes cerca del automóvil del apelante. Pero cerca de las cinco de la tarde, el apelante compareció al tribunal de instancia y declaró en la vista del caso para el cual había sido citado como testigo. No tenemos ante nos las incidencias surgidas ante el tribunal con motivo de su tardía llegada al juicio.

En vista de los hechos expuestos precedentemente el tribunal de instancia correctamente concluyó que el médico apelante fue debidamente citado para comparecer como testigo en el juicio criminal aludido e hizo caso omiso de la citación. El requerimiento telefónico del alguacil y luego la notificación personal que éste le entregó en el hospital, ambas en el mismo día del juicio, constituyeron una notificación real y efectiva de que el tribunal requería su presencia como testigo. La conducta demostrada por el médico apelante al evadir al alguacil durante el curso de varias horas sin haber mediado una justificación para ello nos hace dudar de la contención del apelante en el sentido de que nunca fue notificado con copia de la citación original que fuera entregada en la "Secretaría" del hospital, siguiendo la costumbre sancionada por el uso y admitida por el propio Director Médico de la institución.

Tal forma de notificación no es distinta a la notificación por correo que autoriza la Regla 236 de Procedimiento Criminal. Lo esencial es que se compruebe que el citado ha quedado enterado. No tenemos duda de que así fue.

■ Es bien conocida la facultad inherente de los tribunales de justicia, aparte de la autorización estatutaria, para castigar por desacato por la desobediencia a una orden de un tribunal. *Pueblo* v. *Cuevas Velázquez*, 103 D.P.R. 290 (1975); *Pueblo* v. *Concepción Fonseca*, 101 D.P.R. 357 (1973); *Pueblo* v. *Pérez Díaz*, 99 D.P.R. 788 (1971); *De Torres* v. *Corte*, 58 D.P.R. 515 (1941); *Bigio* v. *Corte*, 46 D.P.R. 448, 455 (1934). 33 L.P.R.A. sec. 517. Sin embargo, no toda desobediencia a una orden del tribunal constituye desacato criminal si en la desobediencia falta el elemento de la intención. *Pueblo* v. *Concepción Fonseca*, supra.

El ilustrado juez de instancia, consciente de la función delicada de los médicos, hizo unas acertadas manifestaciones en torno a ello al sentenciar por desacato al apelante. Este fue informado que los tribunales tienen una deferencia especial hacia los médicos por lo que no les requieren su presencia hasta llegado el momento en que deben declarar como testigos, evitándole así la interrupción de los servicios valiosos que éstos prestan a la comunidad y especialmente en casos particulares en que la vida de un ser humano depende de su presencia en un momento dado. Nos consta que ésa es la práctica usual ante los tribunales del país. Sin embargo, estimó que en este caso el apelante obstaculizó obstinada y desafiantemente al tribunal.

■ El caso ante nos es un vivo ejemplo de intención de desobedecer una orden de un tribunal. No es necesario abundar más sobre la deliberada evasión del apelante para frustrar el cumplimiento del mandamiento expedido por el juez de instancia. Su conducta demostró un menosprecio voluntario de la autoridad que un tribunal ejerció rectamente. No es posible

permitir que la actuación de un ciudadano, en este caso un doctor en medicina, en forma contumaz y en actitud de desafío indebido a la autoridad de un tribunal, interrumpa, impida y obstruya el debido curso de la justicia. El respeto a las cortes a quienes se les ha encomendado la administración de las leyes, que son esenciales para el buen orden de la sociedad, es tan necesario como el respeto a las propias leyes.

*Por los fundamentos expuestos se confirmará la sentencia apelada.*